UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ANTHONY RICHARD HINDS,
*Defendant-Appellant.*

No. 99-4605

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CR-98-391-AW)

Argued: January 25, 2001

Decided: May 15, 2001

Before WILLIAMS and TRAXLER, Circuit Judges, and
Raymond A. JACKSON, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Sharon Styles-Anderson, LAW OFFICES OF SHARON
STYLES-ANDERSON, Washington, D.C., for Appellant. Ronald Jay
Tenpas, Assistant United States Attorney, Greenbelt, Maryland, for
Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney,
Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Anthony Richard Hinds ("Hinds") appeals from his conviction and sentence after a jury convicted him on March 12, 1999, on one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) (1994). Hinds was sentenced to one hundred and eighty-eight months in prison plus five years of supervised release and a one hundred dollar special assessment. For the reasons that follow, we affirm.

### I.

At approximately 4:00 a.m. on July 28, 1998, Hinds was observed for some time standing outside an all night fruit stand by Prince George's County police officer Thomas Hart ("Officer Hart"). After Hinds was joined by an unidentified man on a bicycle, Officer Hart called for back-up and approached both men believing that a drug transaction might be underway. As Officer Hart questioned both men, another police officer arrived to provide back-up. According to Officer Hart, Hinds gave evasive answers and was unable to remember his address. Officer Hart asked Hinds if he could conduct a pat-down search for weapons, but rather than respond, Hinds fled from police. As Hinds ran away, Prince George's County Police corporal Michael Margulis ("Corporal Margulis") arrived on the scene to provide additional back-up. Both Officer Hart and Corporal Margulis proceeded to chase Hinds.

Corporal Margulis eventually overtook Hinds and a scuffle ensued. Officer Hart alleges that he saw a silver handgun in Hinds' hand and attempted to warn Corporal Margulis, but Corporal Margulis did not hear this warning. Hinds managed to escape from Corporal Margulis, and both officers continued to pursue Hinds. According to Corporal Margulis, after observing Hinds make a distinctive motion,[1] he heard

---

[1] The government alleges in its brief that Corporal Margulis observed Hinds make a throwing motion. However, no description of this motion

the sound of metal hitting metal as an object struck a nearby fence. Corporal Margulis marked this area with a t-shirt that was torn from Hinds' torso as he escaped. When Corporal Margulis became too exhausted to continue pursuing Hinds, he returned to the area marked by Hinds' t-shirt and found a loaded Jennings .380 automatic handgun in the same general vicinity.

Officer Hart and Corporal Margulis called in a canine unit, which included a canine and a police officer responsible for the canine, and Hinds was apprehended within twenty minutes of his initial encounter with police. Because Hinds resisted arrest, he suffered bite wounds and pepper spray injuries requiring a visit to the hospital. According to Hinds, these injuries were serious, but police dispute this contention, characterizing Hinds' injuries as minor.

Hinds was indicted on October 7, 1998, on one count of possessing a firearm as a convicted felon, a violation of 18 U.S.C. § 922(g)(1) (1994). A jury found Hinds guilty on March 12, 1999. Hinds now appeals.

## II.

On appeal, Hinds challenges his conviction and sentence based upon five grounds. We address each one in turn below.

## A.

First, Hinds alleges that the district court's refusal to admit into evidence photographs of his bite wounds was an abuse of discretion. Stating that he based his defense upon a theory that police officers fabricated his arrest charges in order to justify the bite wounds that he received, Hinds contends that the photographs were probative as to the alleged bias of both Officer Hart and Corporal Margulis. According to Hinds, when both officers testified that his bite wounds

---

is included in the testimony of Corporal Margulis, who stated that "the defendant ma[d]e a motion like *that*." We note that while it appears from the record that Corporal Margulis demonstrated this motion to the jury, the observed motion was not clarified for the record.

were minor, the photographs were properly admissible to impeach the officers' improper characterization of his injuries.

Under Federal Rule of Evidence 403, district courts employ a balancing test to determine the admissibility of evidence. *See* Fed. R. Evid. 403. This balancing test requires an assessment of the probative value of evidence versus its prejudicial effect, and a district court enjoys broad discretion when making these admissibility decisions. *See United States v. Whitfield*, 715 F.2d 145, 147 (4th Cir. 1983); *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004 (5th Cir. 1998). We review Rule 403 evidentiary determinations for abuse of discretion, and only when there is a clear abuse of discretion should a "trial court's decision to admit or reject photographs into evidence . . . be disturbed." *Whitfield*, 715 F.2d at 147.

In the instant action, the district court ruled that the photographs of Hinds' bite wounds were inadmissible because the photographs were inflammatory and lacked relevance on the issue of Hinds' guilt under 18 U.S.C. § 922(g)(1) (1994). However, because the district court permitted Hinds to question Officer Hart and Corporal Margulis about the existence and extent of his bite wounds, Hinds was able to lay a foundation for his theory of police fabrication and bias. Thus, the district court permitted Hinds to explore the alleged bias of the officers even as it prevented the marginally probative photographs from unnecessarily inflaming the jury. Given these circumstances, we do not find that the district court abused its discretion.

### B.

Second, Hinds contends that a jury instruction concerning his flight from authorities was prejudicial and given in error.[2] Hinds argues that

---

[2]The district court read the following flight instruction to the jury:

> You have heard evidence that the defendant fled after he believed he was about to be charged with committing the crime for which he was now on trial. If proved, the flight of a defendant after he knows he is to be accused of a crime may tend to prove that the defendant believed he was guilty. It may be weighed by you in this connection together with all the other evi-

the evidence adduced at trial did not support the flight instruction. Hinds also argues that the flight instruction went beyond the general inference that flight may be indicative of a defendant's guilt when the instruction stated that "the defendant fled after he believed that he was about to be charged with a crime." According to Hinds, this alleged error presents a basis for reversal because there exists a reasonable probability that the flight instruction materially affected the jury's verdict.

While we acknowledge that evidence of flight presents a weak inference of guilty knowledge on the part of a defendant, such evidence may nevertheless be relevant and probative on the issue of guilt as defined by Federal Rule of Evidence 401. *See United States v. Porter*, 821 F.2d 968, 976 (4th Cir. 1987). For such evidence to be admissible, "the chain of inferences leading from evidence of flight to consciousness of guilt must lead to consciousness of guilt of the crime charged." *Id.* However, the "inference of [consciousness of guilt] would be completely unfounded where a defendant flees after 'commencement of an investigation' unrelated to the crime charged, or of which the defendant was unaware." *United States v. Beahm*, 664 F.2d 414, 419-20 (4th Cir. 1981). Because Hinds did not object to the flight instruction at trial, we review for plain error. *See United States v. Rogers*, 18 F.3d 265, 268 (4th Cir. 1994).

We find that it was not plain error for the district court to read the flight instruction to the jury, and when viewed in its entirety, the flight instruction does not constitute a basis for reversal of Hinds' conviction. The evidence adduced at trial supported the possibility that Hinds fled from police because he feared that he would be

---

dence. However, flight may not always reflect feelings of guilt. Moreover, feelings of guilt which are present in many innocent people do not necessarily reflect actual guilt.

You are specifically cautioned that evidence of flight of a defendant may not be used by you as a substitute for proof of guilt. Flight does not create a presumption of guilt. Whether or not evidence of flight does show that the defendant believed he was guilty and the significance, if any, to be given to the defendant's feelings on this matter are for you to determine.

charged with the crime for which he was ultimately convicted. We note that it was only after Hinds was asked if he would consent to a pat-down search for weapons that he fled, and a weapon was subsequently found that could be linked to Hinds. Therefore, we find Hinds' position to be without merit.

## C.

Third, Hinds argues that it was an abuse of discretion for the district court judge to decline to give a curative instruction after he made reference to the word "felony" during *voir dire*. Due to concerns expressed by Hinds, both parties agreed that the word "felony" would be replaced by the words "offense punishable by more than one year." However, the district court judge made reference to the word "felony" during *voir dire* and declined to give a curative instruction proposed by Hinds.[3]

As a reviewing court, we must assess the overall context in which language is used because "[j]ury instructions must be viewed in their entirety and in context." *United States v. Muse*, 83 F.3d 672, 677 (4th Cir. 1996) (citing *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)). When a district court denies a defendant's requested jury instruction, we review for abuse of discretion. *See United States v. Helem*, 186 F.3d 449, 454 (4th Cir. 1999). However, even when a district court's failure to give a requested jury instruction amounts to an abuse of dis-

---

[3]The district court judge declined to give a curative instruction proposed by Hinds which stated that "[y]ou are to disregard any previous indication by the Court that the prior conviction may have been a felony. There was no evidence before you that the prior conviction was in fact a felony." However, we note that the following jury instruction was given at trial:

> [T]he prior conviction that is an element of the charge here is only to be considered by you for the fact that it exists and for nothing else. You are not to consider it for any other purpose. You are not to speculate as to what it was for. You may not consider the prior conviction in deciding whether it was more likely than not that the defendant was in knowing possession of the gun that is charged. And so, element number one essentially is not in dispute because it's been stipulated by the parties.

cretion, reversible error results only when a defendant can show actual prejudice. *See United States v. Squillacote*, 221 F.3d 542, 575 (4th Cir. 2000). Prejudice results when a defendant can demonstrate an unreliable or fundamentally unfair outcome to his proceeding. *Id.*

Assuming that the district court judge's reference to the word "felony" during *voir dire* was contrary to an agreement between the parties, we find that the reference, which appears to have been made only once, was harmless and not prejudicial. When the evidence and jury instructions at Hinds' trial are viewed as a whole, we believe that the error did not result in an unreliable or fundamentally unfair outcome. Therefore, Hinds was not prejudiced.

## D.

Next, Hinds asserts that his original defense counsel's failure to file certain pre-trial motions, to provide timely discovery and to make appropriate objections to the flight instruction read to the jury, amounts to ineffective assistance of counsel. However, claims of ineffective assistance of counsel are generally not cognizable on direct appeal. *See United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997). Rather, to allow adequate development of the record, a defendant must bring his claim in a motion under 28 U.S.C. § 2255 (1994 & Supp. IV 1998). *See King*, 119 F.3d 290 at 295; *United States v. Hoyle*, 33 F.3d 415, 418 (4th Cir. 1994). An exception exists when the record conclusively establishes ineffective assistance. *See King*, 119 F.3d at 295. We find that the record in the instant case does not conclusively establish that Hinds' counsel was ineffective. Therefore we do not address this issue on direct appeal. Hinds may assert his claim in a § 2255 habeas motion, if he so chooses.

## E.

Finally, Hinds contends that the evidence was insufficient to support his conviction for a violation of 18 U.S.C. § 922(g)(1) (1994). In a sufficiency of the evidence review, we must determine whether there is substantial evidence, when viewed in a light most favorable to the government, to support the verdict. *See Glasser v. United States*, 315 U.S. 60, 80 (1942). We consider both the circumstantial and direct evidence, noting that even the uncorroborated testimony of

a single witness may be sufficient to sustain a verdict of guilty. *See United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983). More-over, we note that credibility assessments of witnesses are within the province of the jury. *See United States v. Johnson*, 55 F.3d 976, 979 (4th Cir. 1995).

In the instant case, we have reviewed the briefs and materials sub-mitted in the joint appendix and we find sufficient evidence to support Hinds' conviction. We also find no basis to disturb the jury's apparent decision to accord less weight to the rebuttal evidence and arguments presented by Hinds.

### III.

In conclusion, we find no merit in the issues raised by Hinds on appeal. Accordingly, we affirm Hinds' conviction and sentence.

*AFFIRMED*